UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                            CASE NO. 8:20-cr-304-T-33CPT

CHRISTOPHER STREETER,

        Defendant.
_____/

## DEFENDANT CHRISTOPHER STREETER'S SENTENCING MEMORANDUM AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW**, the Defendant Christopher Streeter by and through the undersigned counsel and pursuant to Chapter 18, Section 3553(a), United States Code moves this Honorable Court for variance and/or departure for the reasons set forth herein and in support states as follows:

PROCEDURAL HISTORY

1. On October 1, 2020, the United States filed an information alleging one count of sex trafficking a minor in violation of 18 U.S.C. §§ 1591(a) and (b)(1).

2. On the same date, Mr. Streeter waived indictment.

3. On October 9, 2020, Mr. Streeter entered into a plea agreement (DE 5) with the Government, which was amended days later, on October 15, 2020 (DE 6).

4. Under the Amended Plea Agreement, Mr. Streeter agreed to plead guilty to the sole count of the information and stipulated to a factual basis for the plea.

5. On October 16, 2020, the court accepted Mr. Streeters plea of guilty in accordance with the terms and conditions of the written plea agreement.

1

6. Pursuant to the statute of conviction, Mr. Streeter must be sentenced to a minimum mandatory term of 15 years in prison. Under the United States Sentencing Guidelines he has a total offense level of 43 which corresponds to an advisory sentence of life imprisonment. Pursuant to statute, Mr. Streeter must be placed on supervised release for a period of 5 years to life.

7. In light of the circumstances of this case and his desire to fully accept responsibility for his actions, Mr. Streeter withdraws his prior objections to the facts contained in the PSR.

## BACKGROUND & RELEVANT FACTS

8. According to the stipulated facts in the Amended Plea Agreement, Mr. Streeter participated in activity to procure child pornography from the Philippines between September 2018 through June 2019. The plea agreement pertains to one particular teenager referred to as "Victim-1".

9. There are no allegations that Mr. Streeter *distributed* any of the photographs or videos.

10. There are no allegations that Mr. Streeter sold, resold, recreated, reproduced, or otherwise transferred or shared the photographs or videos that he received.

11. In addition to the stipulated facts stated in the Amended Plea Agreement, the Presentence Investigation Report ("PSR") contains additional "relevant conduct" which includes allegations that Mr. Streeter also engaged a second individual ("Victim-2") to create child pornography.

12. As to Mr. Streeter's personal attributes and background characteristics - Mr. Streeter was born on June 11, 1957, and is now 63 years old. PSR ¶ 87.

13. He was born in New Zealand to married parents and is one of four children born to that union. *Id.* ¶¶ 88-89.

14. Mr. Streeter's parents divorced when he was approximately 11 years old, and prior to that time his home life was tumultuous. *Id.* ¶ 90. After his parents' divorce, Mr. Streeter did *not* maintain a relationship with his father and drifted away from his siblings due to the divergent interests of the siblings. *Id.* ¶ 91.

15. Mr. Streeter was raised in New Zealand and was educated there through completion of his high school education. *Id.* ¶ 93. After completing high school, Mr. Streeter attended the New Zealand Maritime Academy and completed his bachelor's degree in Marine Engineering. *Id.* ¶ 122. Later, he attended Merchant Marine academy in New Zealand to obtain a Mate's license. *Id.* ¶ 123.

16. Shortly thereafter, he moved to the United States in 1980. Mr. Streeter continued his education and obtained his Master's license through the United States Coast Guard program. *Id.* ¶¶ 93-94.

17. Mr. Streeter settled in Seattle, Washington, and met his wife in that location. They married shortly after meeting. *Id.* ¶ 94. The union produced no children and Mr. Streeter was divorced in 1985. *Id.*

18. Around that time, Mr. Streeter moved to California where he met and married his second wife. *Id.* ¶ 95. One child (a son) was produced from their union and Mr. Streeter maintains a healthy relationship with his now adult (34-year-old) son. *Id.*

19. In 1989 Mr. Streeter was legally divorced from his second wife and moved to Louisiana. *Id.* ¶ 96. After his second marriage, Mr. Streeter moved throughout the United States numerous times and was married to three other women (legally and at separate times) and had one additional child, a female who is currently 16 years old. *Id.* ¶¶ 97-101.

20. In 2009 Mr. Streeter settled in Tampa, Florida and became married to his current wife. *Id.* ¶ 103. Mr. Streeter and his current wife have a son who is currently 3 years old. *Id.*

21. Mr. Streeter and his wife have a strong, healthy, and supportive relationship and plan to continue their marriage through the sentencing in this matter. *Id.* ¶¶ 104-106.

22. As previously stated, Mr. Streeter is nearing his mid-60's and presents with serious health concerns. *Id.* ¶¶ 108-114. Mr. Streeter has a hernia that presently needs repair; a torn right osteoarthritis in both knees; sleep apnea; type II diabetes; and irregular heart rate which is stress induced. *Id.*

23. In addition to these physical ailments, Mr. Streeter is chronically claustrophobic – a condition that has plagued him since 1993. *Id.* ¶ 115. Since his arrest on these charges, Mr. Streeter has voluntarily sought treatment from therapist Vanessa Fernandez and participates in the R.E.A.C.H program. *Id.* ¶ 117. Mr. Streeter not only attends weekly therapy sessions but is an active participant who shares and reflects on his conduct and the underlying causes thereof. *Id.*

24. At the time of his arrest, Mr. Streeter was gainfully employed as a business owner who owns, operates, and manages L.Y.C.S. Incorporated. *Id.* ¶ 125. Mr. Streeter has owned the company since 2014. *Id.* The company is tasked with repairing and refurbishing private yachts. *Id.* Mr. Streeter plans to return to his position and continue operation of the business when he is released from the custody.

25. Although Mr. Streeter recognizes the severity of the offense to which he has pled, Mr. Streeter has fully accepted responsibility for his actions, ***has assisted the government in efforts to identify individuals connected to his scheme, and intends to continue to provide any information possible to assist the government in their ongoing efforts moving***

*forward*. Mr. Streeter assisted the government regarding an operation to capture sex traffickers and save sex trafficking victims in the Philippines. Mr. Streeter promptly met with the AUSA and case agents, debriefing for hours, providing them with unfettered access to is email, Facebook, and any other evidence that would be helpful.

26. Further, Mr. Streeter is an otherwise upstanding citizen who has <u>no prior criminal record</u> and has never been previously arrested, indicted, or served time in the custody of the state or federal government.

27. Mr. Streeter has a supportive wife and a minor child who rely upon him for emotional support and financial support and a lengthy term of incarceration will cause a significant strain on his family.

28. Mr. Streeter also has community support and close friends who will provide guidance, support, emotional strength, and fully intend to assist Mr. Streeter in maintaining a positive and productive life upon his release from any incarceration imposed by this court.

29. Ultimately, Mr. Streeter is a good person who made inexplicitly bad choices in connection with his involvement in this case. Given the facts of the case, the punishment at issue, and Mr. Streeter's unique offender characteristics this Court should elect to vary from the guidelines and impose a sentence of 15 years in prison. Such a sentence is severe enough to serve adequate deterrence, but no harsher than necessary to serve the purpose and goals of the Sentencing Guidelines and applicable policy statements contained therein.

## **MEMORANDUM OF LAW**

### 18 U.S.C. § 3553(a) & APPLICABLE LEGAL STANDARDS

The Court is aware of its discretion pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and application of the sentencing factors set forth at 18 U.S.C. § 3553(a). Therefore, undersigned

counsel will not waste the Court's time setting forth sentencing law in this memo. As detailed herein, application of the § 3553(a) sentencing factors to this offense and this defendant supports a sentence of 15 years in prison.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

First, § 3553(a) instructs this Court to consider the specific nature and circumstances of the offense at issue in determining a fair and reasonable sentence. This is a serious felony offense, but is non-violent and was limited in scope, taking place over a period of less than 2 years.

Although 18 U.S.C. § 1951(b)(1) contains language of "force", courts have held that offenses committed under the above stated provision are not categorically "violent" in nature. *See United States v. Ford*, No. 3:14-CR-00045-HZ, 2018 U.S. Dist. LEXIS 39707 *7-8 (D. Ore. Mar. 10, 2018). *See also United States v. Fuertes*, 805 F. 3d 485, 500 (4th Cir. 2015) (explaining that sex trafficking is a nonviolent offense because there is no risk that the *defendant* will use physical force against the victim to accomplish the crime). Accordingly, for purpose of applying the § 3553(a) factors this Court should consider Mr. Streeter to have committed a "nonviolent" offense.

The nonviolent nature of an offense is a consideration that is rightly made in determining an appropriate and fair sentence. *See United States v. Davis*, 458 F. 3d 505, 511-12 (6th Cir. 2006) (indicating that the nature of the crime as violent or nonviolent should be considered in evaluating the reasonableness of a sentence imposed); *United States v. Sharpe*, 2008 U.S. LEXIS 7927 (E.D. Penn. Feb. 1, 2008) (considering the nonviolent nature of an offense in determining a reasonable sentence).

As previously stated, Mr. Streeter in no way intends to undermine or minimize the seriousness of the offense to which he has pled. Having said that, Mr. Streeter was responsible for procuring child sex materials for personal use without utilizing an weapons, guns, knives, or threats of

violence against any participant. Mr. Streeter utilized financial incentives to encourage and solicit these activities, which is criminal and reprehensible; however, it does not constitute a violent offense and this fact should be considered by the court in determining the reasonableness of a sentence under the circumstances.

Mr. Streeter also notes that much of the information provided in the Presentence Investigation Report amounts to *relevant* conduct which is *not* contained in either the charging information or the plea agreement. More specifically, the Information refers <u>solely and exclusively</u> to "Victim-1" and does not reference other victims in its charge. Similarly, the Amended Plea Agreement <u>exclusively</u> discusses the conduct connected to Victim-1 and does not reference any factual basis or stipulation as to other "unknown" or "unidentified" victims or "Victim-2" (who is discussed in the PSR). The PSR contains no less than 17 numbered paragraphs discussing a *second* identifiable victim, "other" unidentifiable victims and indicating that more victims "may" be discovered in the future. *Id.* ¶¶ 19-41.

Relevant Conduct is defined as

> All acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and [] in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were – [] within the scope of the jointly undertaken criminal activity; [] in furtherance of that criminal activity; and [] reasonably foreseeable in connection with that criminal activity.

*See* USSG § 1B1.3 (2019). Cases interpreting this provision indicates that "the sentencing court must consider all relevant conduct" when determining an appropriate sentence and that the above definition is "defined broadly [to] include[] both uncharged and acquitted conduct that is proven by a preponderance of the evidence at sentencing." *See United States v. Richardson*, 749 Fed. Appx. 906, 907-08 (11th Cir. 2018).

Although the relevant conduct definition is *broad* it is not *limitless*. *See United States v. Maxwell*, 34 F. 3d 1006, 1010 (11th Cir. 1994). These limits require the court to consider "the similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct" in determining whether relevant conduct should be considered and the *weight* it should be afforded. *Id.* at 1011. *See also United States v. Hahn*, 960 F. 2d 903, 909 (9th Cir. 1992) (discussing limitations on the use of relevant conduct evidence in the context of continuing scheme offenses).

In the instant case, the information charges that between September 2018 and June 2019 Mr. Streeter engaged in sex trafficking. The PSR discusses the offense conduct, which involved "Victim-1". PSR ¶¶ 19-24. Thereafter, the PSR (rightfully) discusses as relevant conduct acts occurring between April 2019 and June 2019 as to a second victim. *Id.* at ¶¶ 25-26. Thereafter, however, the PSR dedicates countless paragraphs to its conclusion that <u>beginning in 2009</u> Mr. Streeter worked with 'approximately 100 individuals' are 'recruiters' and had as many as 'potentially 20 victims' between 2009 and 2019. *Id.* at ¶¶ 27-41. This information is not relevant conduct and not supported by the evidence.[1] There is no nexus of victims and no nexus of time. Mr. Streeter asserts that the conduct "beginning in 2007" is not relevant conduct and that this court's review of the circumstances of the offense should be limited to the period of the Information and Victim-1 and Victim-2.

---

[1] The PSR assumes that any funds sent from Mr. Streeter to the Philippines in the past was to pay for child sex photographs or videos, which is false and not supported by the evidence. For years, Mr. Streeter sent funds to the Philippines to his wife, to her family, and to others for purposes of providing adult live pornography photographs and videos. Assuming every money transmission is relevant conduct and part of child sex trafficking is inaccurate and does not fit the definition of relevant conduct in this case.

Considering the nonviolent nature of Mr. Streeter's involvement in these offenses, relevant conduct connected to the offenses, and the circumstances of the offenses the Court must craft a reasonable sentence equivalent to the minimum mandatory sentence to be imposed.

### B. CHARACTERISTICS OF THE OFFENDER

Next, § 3553(a) instructs the Court to consider Mr. Streeter, as an individual (rather than a criminal) to determine a fair and reasonable sentence. In evaluating Mr. Streeter as an individual, the court should account for his lengthy history of law-abiding behavior, his family circumstances during his upbringing, his ability to obtain gainful employment and be a contributing member of society, his health conditions, and his network of supportive family and friends – including a wife and a son who is merely 3 years old.

In evaluating the characteristics of the offender, the Court must should consider a wide array of information to achieve the "fullest information possible concerning the defendant's life and characteristics." *See Pepper v. United States*, 562 U.S. 476, 480 (2011). *See also Williams v. New York*, 337 U.S. 241, 246-47 (1949) (recognizing that the defendant's characteristics must be strongly weighed in the sentencing context). *See also* 18 U.S.C. § 3662 (indicating that "no limitation shall be placed" on information "concerning the [Defendant's] background, character and conduct" in the sentencing analysis); *Untied States v. Meillier*, 650 F. Supp. 2d 887, 897 (D. Minn. 2009) (indicating that the "characteristics of the defendant" "weigh[ed] heavily" in favor of imposing a minimal prison term). Accordingly, factors such as "age, education, mental or emotional condition, employment history, lack of guidance as a youth, family ties, military, civic, charitable or public service" must be considered under § 3553(a) when raised. *See Untied States v. Howard*, 2010 U.S. Dist. LEXIS 17740 (D. Neb. Mar. 1, 2010).

Mr. Streeter is in his sixties, has significant health problems,[2] and has no prior criminal history. Although the guidelines *do* account for criminal history in their final determination of a guideline range, the *do not* account for the length of time in which an offender maintained a crime-free life. *See United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993). As stated in *Ward*,

> While awarding defendants generally [] some credit for leading relatively crime-free lives, the Criminal History Category of the Sentencing Guidelines does not account for the length of time a particular defendant refrains from criminal conduct. Thus, for example, the guidelines do not distinguish between a nineteen-year-old and a sixty-year-old, both of whom have led crime-free lives and consequently are assigned the same low Criminal History Category . . . Although age [by itself] is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose.

*See Ward*, 814 F. Supp. at 24. Mr. Streeter is an individual who has maintained a crime free existence for a substantial period of time. Mr. Streeter submits that the Court should first and foremost consider his lack of criminal history and the length of time in which he maintained a crime-free existence.

In addition, the Court should consider the circumstances under which Mr. Streeter was raised. Until the age of 11, Mr. Streeter was engulfed in a tumultuous home life. At that time, just before puberty, Mr. Streeter's parents divorced, and Mr. Streeter did not maintain a relationship with his father. Accordingly, Mr. Streeter was raised without an adequate father figure during the most formative years of his life.

Numerous credible sources have noted a correlation between the commission of criminal activity and lack of adequate male guidance. *See e.g.,* Jared Brown, MA, MS, MS, MS, *Father-Absent Homes: Implications for Criminal Justice and Mental Health Professionals*, (Aug. 4, 2020)

---

[2] The Court is well-aware of Mr. Streeter's need for multiple hernia surgeries. In addition, this memo above and the PSR outline his other significant health concerns.

10

(https://www.mnpsych.org/index.php%3Foption%3Dcom_dailyplanetblog%26view%3Dentry%26category%3Dindustry%2520news%26id%3D54). Studies like the above-referenced article, which was featured by the Minnesota Psychological Association indicate that "lack of paternal involvement" in children's lives has led to ten specifically identified "adverse outcomes" including: (1) perceived abandonment; (2) attachment issues; (3) child abuse; (4) childhood obesity; (5) criminal justice involvement; (6) gang involvement; (7) mental health issues; (8) poor school performance; (9) poverty and homelessness; and (10) substance abuse. *Id.* Specifically focusing on the criminal justice outcome, the article notes that "youths who never had a father living with them have the highest incarceration rates." *Id.*

Mr. Streeter does not mean to use his upbringing as an excuse for his behavior, but rather indicates that forces beyond his control did contribute to the decisions he has made and his present legal situation. The court can and should consider his upbringing and his lack of a father figure during his teenage years in evaluating his conduct and whether a substantial prison term will serve the interests of justice.

Mr. Streeter also notes that he has obtained upper-level education and has skills to obtain gainful employment and be a contributing member of society upon his release from incarceration that are unrelated to criminal activity. Mr. Streeter has a college degree in marine engineering and has a viable business that he was operating with success at the time of his arrest. Mr. Streeter will contribute to society in a meaningful way through gainful employment if he is given an opportunity to be released from custody at an age where he can still work and support his family.

Finally, Mr. Streeter enjoys a strong and supportive family relationship with a loving wife and young son. Mr. Streeter intends to provide support for both his wife and child and being removed from his child's life would cause great detriment to his development. Mr. Streeter is a

good man with supportive friends who can assist and encourage his rehabilitation even after he is released from his mandatory term of incarceration.[3] *See* Correspondence to the Court from Friends and Family (attached hereto as Ex. A-D).

Given the foregoing, the court should consider Mr. Streeter's lengthy crime-free life, his upbringing, his ability to contribute to society upon release, his age and health characteristics, and his current support systems and qualities in crafting a sentence that is equivalent to his mandatory minimum term of 15 years in prison.

### C.  THE NEED TO "PROTECT THE PUBLIC" FROM MR. STREETER

The relevant statutory scheme likewise indicates that the court should assess any need to "protect" the public from Mr. Streeter and the likelihood of recidivism.

In this respect, Mr. Streeter asserts that he is <u>not</u> a danger to the community and has a very low likelihood of recidivism. In December 2020 Mr. Streeter was evaluated by Dr. Michael P. Gamache, a psychologist with whom this Court is very familiar. After an extensive evaluation, Dr. Gamache is of the professional opinion that Mr. Streeter is a <u>low risk</u> for reoffending as a sexual offender. A copy of Dr. Gamache's report is attached hereto as Exhibit E. The report speaks for itself – it explains how Mr. Streeter became addicted to Filipino dating and sex-chat websites as a form of companionship when he was a single father caring for his young daughter. It explains how Mr. Streeter's addiction for years involved only adult females, but eventually strayed into the area that finds him in this courtroom. But most importantly, Dr. Gamache's report ultimately finds that

---

[3] Mr. Streeter provides character letters to support his prayer for relief which are attached hereto as exhibits. The letters speak for themselves and clearly indicate both Mr. Streeter's goodhearted nature and his supportive network of family and friends willing to support him during and after his release from custody.

Mr. Streeter is not a pedophile, not a sexual predator, and a low risk for recidivism. It also finds that he is a good candidate for treatment and supervision.

The findings of Dr. Gamache are of critical importance to the determination that Mr. Streeter is *not* a future danger to the public. Although Mr. Streeter committed serious offenses and is facing serious consequences for his actions, he has no criminal history, accepts responsibility for the actions, acknowledges the wrongness of his conduct, and is ultimately a *low risk* for reoffending. Dr. Gamache's opinion is valid and based on reliable scientific methods and is formed based on well over 30 years of experience.

Further, Mr. Streeter will be nearly 80 years old when he is released from custody, assuming that he is sentenced to the minimum mandatory fifteen 15-year term of incarceration in this case. Upon his release, he will be placed on a mandatory term of sex offender supervision for at least 5 years (and more likely for life), which will undoubtedly include computer access restrictions. He will also be subject to sex offender registration and related restrictions. Accordingly, Mr. Streeter will be an 80-year-old man, with limited (or no) access to the internet and almost no available means, ability, or intention to commit future offenses.

Ultimately, notwithstanding the serious allegations against Mr. Streeter, he is not a serious risk for reoffending given his age, his anticipated age upon release, adequate conditions that may be placed upon him during supervised release, and the expert opinion of Dr. Gamache. As such, a 15-year term of incarceration would be sufficient punishment and serve the goal protecting the public.

### D.  PERTINENT POLICY STATEMENTS

In addition to these factors, the court should review and evaluate whether pertinent policy statements support a variance. In the instant case, USSG § 4B1.5 indicates that the sex offender enhancement "applies to offenders whose instant offense of conviction is a sex offense committed

against a minor <u>and who is present a continuing danger to the public</u>." *See* USSG § 4B1.5 ⁋ 5. As previously stated, this was an offense of very limited duration and Mr. Streeter is <u>not</u> a continuing danger to the public and does not present a high risk of recidivism.

Accordingly, while Mr. Streeter may arguably fall within the enhancement provision of USSG § 4B1.5 he does not fall within its *intended* scope. The policy notes specifically indicate that the enhancement was crafted and intended to apply to those who present a continuing threat given their track record of continuous abuse. Applying the 5-level enhancement to Mr. Streeter under the circumstances (even if potentially such enhancement is *technically* warranted) is contrary to the policy statements in the guidelines. Accordingly, the Court should discount the 5-level enhancement in its determination of sentencing and in crafting a sentence.

### E.  SENTENCING DISPARITY

Section 3553(a) also indicates that considerations of sentencing disparity among similarly situated defendants is a relevant consideration to the ultimate sentence imposed. Without question a central goal of the guideline scheme is to ensure as much "parity in sentencing as possible." *See United States v. Everett*, 376 Fed. Appx. 271, 273 (3d Cir. 2010). Further § 3553(a) *requires* the court to consider the sentences of similarly situated defendants in its application of the guidelines in any given case. *See United States v. Rodriguez*, 527 F. 3d 221, 228-29 (1st Cir. 2008) (recognizing that a court may base a variant sentence on parity considerations); *United States v. Butler*, 130 F. Supp. 3d 317, 323 (D.C. Cir. 2015) (acknowledging that disparity is a consideration for sentencing).

According to the Department of Justice the "median prison sentence for defendants convicted of human trafficking in 2015 was 15 years." In 2019, statistics indicate that individuals convicted of crimes involving sex trafficking in minor victims received an average sentence of 150 months

(just over 12 years). *See* STATISTA: AVERAGE LENGTH OF IMPRISONMENT FOR HUMAN TRAFFICKING DEFENDANTS IN THE UNITED STATES IN 2019, BY TYPE OF TRAFFICKING.

Courts have upheld significant variances in cases like Mr. Streeter's. For example, in *United States v. Brantley*, 762 Fed. Appx. 730, 731 (11th Cir. 2019), the defendant was sentenced for violations of 18 U.S.C. § 1591(a); 18 U.S.C. § 2251(a) and § 18 U.S.C. § 2252(a)(2) and (b). With a base level offense of 34 plus application of 5 separate sentencing enhancements and with a category IV criminal history score - the defendant's guideline range was life imprisonment. *Id.* at 731. The Court granted a variance from the life imprisonment guideline range imposing a 265-month sentence which the Eleventh Circuit found to be substantively reasonable. *Id. See also, e.g.*, *United States v. Coats*, 462 Fed. Appx. 199 (3d Cir. 2012) (finding that a 300 month sentence was reasonable where the defendant's guideline range was life imprisonment and the allegations stemmed from images of the defendant's own two-year-old child performing oral sex on him); *United States v. Richards*, 659 F. 3d 527 (6th Cir. 2011) (finding variance appropriate for a life sentencing range after conviction from 11 child pornography related offenses stemming from defendant's management and operation of a pornography website); *United States v. McIntosh*, 414 Fed. Appx. 840 (6th Cir. 2011) (finding variance appropriate in a child pornography case and sentencing the defendant to 120 months incarceration).

Defendants similarly situated to Mr. Streeter have often received sentences that are *well below* the life imprisonment guideline range applicable to Mr. Streeter. The court can and should consider this in determining a fair and reasonable sentence. Once again, Mr. Streeter does not minimize his role in the offense at issue and accepts responsibility for his own conduct. However, 15 years in prison is no "slap on the wrist" and constitutes a significant period of incarceration – particularly for an offender who has never been previously arrested and has never been incarcerated.

F.  **ACCEPTANCE OF RESPONSIBILITY**

Mr. Streeter promptly waived indictment and pleaded guilty to an Information. He cooperated fully with the investigation of his case and the investigation of others involved in this and other offenses. He saved the United States, the Court, the victims, and potential jurors significant time, money, and stress. Yet, he is receiving no benefit whatsoever for acceptance of responsibility. As outlined in detail in his Motion for Downward Departure, the Guidelines calculate Mr. Streeter's 3-level reduction for acceptance of responsibility up above the applicable total offense level of 43. Therefore, he gets absolutely zero reduction in his guidelines range for acceptance of responsibility. That result is unfair, unjust, contrary to the intentions of the Sentencing Commission. It is also contrary to the agreement between the parties – that Mr. Streeter would promptly plead guilty, cooperate, and receive a 3-level benefit for acceptance of responsibility under the Guidelines. Even if the Court denies Mr. Streeter's motion for a downward departure, it should specifically grant a 3-level variance such that Mr. Streeter's total offense level is 40, which corresponds to a guidelines range of 24-30 years in prison.

CONCLUSION

WHEREFORE, Mr. Streeter Respectfully Requests this Honorable Court vary from the guideline range in accordance with the circumstances and arguments set forth herein and the directive of § 3553(a) to craft a fair and reasonable sentence of 15 years in prison.

Respectfully submitted,

*/s/ Mark P. Rankin*
Mark P. Rankin
Florida Bar No. 0177970
The Law Office of Mark P. Rankin, P.A.
805 W. Azeele St.
Tampa, FL 33606
Telephone No. (727) 365-1751
Email: mark@rankinlawoffice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of January 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the AUSA of record and counsel for any co-defendants.

      /s/ Mark P. Rankin
      Mark P. Rankin