IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,          )
                                   )
               Plaintiff,          )
                                   )
                                   )  Case No.
        vs.                        )  8:20-CR-00304-VMC-CPT
                                   )
                                   )
CHRISTOPHER JOHN STREETER,         )
                                   )
               Defendant.          )

_____

INITIAL APPEARANCE and CHANGE OF PLEA HEARING
BEFORE THE HONORABLE CHRISTOPHER P. TUITE
UNITED STATES MAGISTRATE JUDGE

OCTOBER 15, 2020
9:04 A.M.
TAMPA, FLORIDA

_____

Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

_____

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

1    **APPEARANCES:**

2

3    **FOR THE GOVERNMENT:**

4

5              Francis D. Murray

6              United States Attorney's Office

7              400 North Tampa Street, Suite 3200

8              Tampa, Florida  33602

9              (813) 274-6000

10

11

12   **FOR THE DEFENDANT:**

13

14             Mark P. Rankin

15             The Law Office of Mark P. Rankin

16             1410 North Westshore Boulevard

17             Suite 200

18             Tampa, Florida  33607

19             (727) 365-1751

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2                    – – – o0o – – –

3          THE COURT:  Madam Clerk, if you can please call the

4  case.

5          COURTROOM DEPUTY:  The matter of the United States of

6  America versus Christopher John Streeter, Criminal Case Number

7  8:20-CR-304-T-33CPT.

8          THE COURT:  And, Counsel, if I could have your

9  appearances for the record, please, beginning with the

10  Government.

11          MR. MURRAY:  Good morning, Your Honor.

12  Francis Murray for the United States.

13          THE COURT:  Good morning.

14          MR. RANKIN:  Good morning, Judge.  Mark Rankin on

15  behalf of Mr. Streeter.

16          THE COURT:  Good morning, Mr. Rankin.  Good morning,

17  Mr. Streeter.

18          THE DEFENDANT:  Good morning, Your Honor.

19          THE COURT:  To the parties, I think it makes sense

20  dealing with pretrial release conditions or detention at the

21  outset.  We have the Pretrial Services Officer here.

22  Mr. Rankin, have you had an opportunity to review the Pretrial

23  Services report?

24          MR. RANKIN:  Yes, Your Honor.

25          THE COURT:  And Mr. Murray?
```

1          MR. MURRAY:  Yes, Your Honor.

2          THE COURT:  Mr. Murray, what's the Government's

3    position as to detention or release?

4          MR. MURRAY:  Your Honor, we are not requesting

5    detention.  Although there is a presumption under 3142(e), we

6    believe that this Court can fashion conditions that would

7    assure Mr. Streeter's appearance at all proceedings and protect

8    the community.

9          I'm going to start where the offense itself, Judge.

10   We don't have any evidence from this investigation that

11   Mr. Streeter was involved in any hands-on abuse in the

12   United States.  When we executed a search warrant on his home,

13   we interviewed his minor children, they did not disclose any

14   abuse.  So as far as I can tell and as far as I can proffer to

15   the Court, we have no evidence that Mr. Streeter was involved

16   in any illicit conduct involving minors outside the portal of

17   the internet and then Facebook, which is well-detailed in the

18   plea agreement.

19         Judge, as far as a risk of non-appearance, we believe

20   that Mr. Streeter will appear.  He's been aware of this

21   investigation since last spring when we executed a search

22   warrant on his home.  He has been -- he retained counsel after

23   that and we've been in communication with his counsel ever

24   since.  He's been acutely aware of the nature of the offense

25   that he faces and the potential guidelines that he faces since

```
1   this summer, and he has nevertheless come in here and is
2   willing to plead, you know, by plea agreement to an
3   Information.  He appeared today on time.
4           In addition to that, Judge, there is an active
5   cooperation going on.  It would be helpful to the Government to
6   not have him detained pretrial.  Some of that cooperation, or a
7   large portion of it, you know, efforts have already been made,
8   and we have -- he has met with us at HSI, we've done a full
9   proffer, and he has made some attempts at proactively
10  cooperating with the United States.
11          And so given all that, Your Honor, although,
12  you know, a case like this obviously the Court has to weigh
13  pretty carefully, you know, the risk to the community and risk
14  of flight, we do think that just by virtue of him being here
15  and everything else I've elaborated on that this Court can
16  fashion conditions.  We would ask for GPS monitoring.  We are
17  going to ask for Adam Walsh Act conditions with some slight
18  modifications, but we think -- I believe counsel has brought
19  his passport as well.  My understanding is he does not have a
20  New Zealand passport, so it's just the United States passport
21  he's willing to surrender today to Probation -- or, I'm sorry,
22  Pretrial.
23          THE COURT:  Mr. Murray, if I could, a few follow-up
24  questions.  I understand the argument that Mr. Streeter at
25  least by way of the Government's investigation hasn't displayed
```

1  any hands-on abuse, as you described it.  The facts in the

2  plea agreement, which I assume Mr. Streeter, at the end, since

3  he has signed the plea agreement, will acknowledge are accurate

4  are troubling and indicate that he's cause the hands-on abuse

5  to a number of minors over an extended period of time.  I did

6  not hear the Government set forth any particular conditions,

7  but one, if the Government is not moving to detain the

8  defendant, would be the issue of a bond.  What has the

9  Government considered in that regard and/or discussed with

10 defense counsel?

11          MR. MURRAY:  Your Honor, I haven't had any

12 discussions with defense counsel, but I did notice there's

13 equity in his home.  You know, we believe a secured bond with,

14 you know, 100,000 -- I think it's at $230,000 in equity.

15 A $100,000 secured bond would be appropriate if this Court --

16          THE COURT:  He has 2.7 million in assets.

17          MR. RANKIN:  Judge, that's -- excuse me.  Do you

18 mind --

19          THE COURT:  Or net worth.

20          If I could talk to Mr. Murray for the moment,

21 Mr. Rankin, I will definitely circle back with you.

22          MR. MURRAY:  Judge, we would certainly ask for a

23 secured bond.  You know, if the Court thinks that a million

24 dollar secured against the assets is appropriate then we would

25 fully support that.  Ultimately, you know, if the Judge -- if

1   Your Honor is not satisfied by electronic monitoring, you know,

2   perhaps home detention would be appropriate as well.

3          THE COURT:  There's also the issue, Mr. Murray, that

4   according to the Pretrial Services report everyone in the

5   defendant's household possesses multiple electronic devices,

6   including smartphones, laptops and iPads.  How does the

7   Government propose the Court deal with that?

8          MR. MURRAY:  Judge, I have had a chance to talk to

9   counsel about this.  Our understanding of the nature of the

10  defendant's work is that he needs access to the internet, that

11  it is especially true if he is going to be detained in his

12  house or in or around his house by electronic monitoring.

13  Your Honor, I -- I think really the only answer to that is

14  either the Court enforces the Adam Walsh Act strictly and has

15  him remove the internet from his home or the Court places as a

16  special condition that the defendant not use any social media,

17  and, you know, I think it goes without saying not access any

18  illicit material on the internet.

19         THE COURT:  What are you proposing?

20         MR. MURRAY:  Judge, we would propose that that would

21  be sufficient to protect the community.

22         THE COURT:  When you say "that" would be sufficient,

23  to what are you referring?

24         MR. MURRAY:  That the Court lay down a special

25  condition that he not access any illicit material on the

```
1    internet as well as he refrain from the use of any kind of
2    social media whatsoever.  All the offense conduct in this case
3    went through social media, i.e. Facebook, and so, you know,
4    given that he's surrendered most of his accounts to
5    law enforcement already for the purposes of cooperation, we
6    would just ask that he not create any new accounts and that he
7    not go on any of his old accounts and that he simply stay off
8    of social media.  We think that that condition would be
9    sufficient to prevent any further harm overseas or here
10   domestically.
11              THE COURT:  Okay.  Thank you, Mr. Murray.
12              Mr. Rankin, I appreciate your patience.
13              MR. RANKIN:  Yes, Judge.
14              THE COURT:  What say you as to a number of things,
15   beginning with the bond issue?
16              MR. RANKIN:  Judge, I think this is a case where a
17   signature bond is sufficient.
18              THE COURT:  I am not going to impose a signature
19   bond, so it's going to be a secured bond and you'll have to
20   make argument to the Court as to the appropriate amount of the
21   security.
22              MR. RANKIN:  Well, Judge, the only -- the only
23   property that he owns that could be posted as security would be
24   his home, which has equity of about, how much, 150,000?
25              THE DEFENDANT:  20,000.
```

```
 1              MR. RANKIN:  20,000?
 2              THE DEFENDANT:  Yeah, we bought it two years ago.
 3    We bought it two years ago.
 4              MR. RANKIN:  And you didn't put more than 20,000
 5    down?
 6              THE DEFENDANT:  No.
 7              MR. RANKIN:  Judge, he only has about a 20,000 in
 8    equity apparently.
 9              THE COURT:  What I'm seeing in the Pretrial Services
10    report, it has a market value of 315,000 and they purchased the
11    home for 270, so --
12              THE DEFENDANT:  That's not right.  275.
13              MR. RANKIN:  275?
14              THE DEFENDANT:  275.
15              THE COURT:  Okay.  Well --
16              MR. RANKIN:  So about 40,000, Judge, or 50.
17              THE COURT:  I just read there's 40,000 in a personal
18    checking account.
19              MR. RANKIN:  Correct.
20              THE COURT:  And then where is all the other money
21    that the defendant made in 2019, 2.2 million in gross income?
22              MR. RANKIN:  Judge, that's not his income.  He makes
23    only the salary of 80,000.
24              THE COURT:  A month.
25              MR. RANKIN:  I'm sorry?
```

1          THE COURT:  It's 80,000 a month.

2          MR. RANKIN:  Right.

3          THE COURT:  So that's roughly a million a year.

4          MR. RANKIN:  It's a year.

5          THE DEFENDANT:  80,000 a year.

6          MR. RANKIN:  That's his salary, Judge, is the 80,000

7  a year.  When Pretrial Services asked him how much do you think

8  your company is worth, how much would you sell it for, and he

9  was thinking of, well, what are the gross revenues and

10  typically there's a multiple of that and he gave them a number.

11  That's not indicative of how much income he has or how much

12  cash he has.

13          THE COURT:  The Pretrial Services report lists

14  monthly income as 80,000, so that's where the Court is deriving

15  that figure from.

16          MR. RANKIN:  That's annual, Your Honor.

17          THE COURT:  Ms. Watson, would you mind coming forward

18  just so we have some clarity on this issue.  And if you could

19  identify yourself for the record once you come up to the

20  lectern.

21          PRETRIAL SERVICES:  Ashley Watson, Pretrial Services

22  Officer.

23          THE COURT:  Thank you for being here.

24          Mr. Rankin and his client have represented that the

25  $80,000 figure is an annual figure as opposed to a monthly

1  figure.  You have it, as I understand it, as a monthly figure,

2  and I understand that sometimes there can be miscommunication.

3  Is that a fair representation, based on what you know, that

4  it's an annual figure?

5       PRETRIAL SERVICES:  Right.  So I do believe that it

6  is to be an annual figure based on what was listed, so there

7  was a miswriting in the pretrial report.

8       THE COURT:  And you have the market value of the home

9  as 315,000.  From what source did you derive that?

10      PRETRIAL SERVICES:  The 315,000, that was the number

11  that the defendant gave to me.  When I did look the property up

12  on the property appraiser website, the market value did come to

13  be 232,766.

14      THE COURT:  Okay.  And you have the defendant and his

15  wife purchasing the home at 270,000.

16      PRETRIAL SERVICES:  Yes, Your Honor.

17      THE COURT:  He had indicated this morning that it was

18  275,000.  Is there -- is that a possibility, or --

19      PRETRIAL SERVICES:  Sorry, Your Honor.  270,000 was

20  the number that was also listed on the property appraiser

21  website.

22      THE COURT:  Okay.  All right.  Thank you very much,

23  Ms. Watson.

24      PRETRIAL SERVICES:  You're welcome.

25      THE COURT:  So, Mr. Rankin, I believe that clarifies,

1    to your point, that the $80,000 figure that's listed is just a

2    scrivener error, that it's an annual income, and that the

3    market value, it appears to be anywhere between 232,000 and

4    change and 315.  Typically, as you know, at least Courts'

5    institutional knowledge is that the appraised value is

6    typically less than its true value by as much as 20 or

7    25 percent, so --

8              MR. RANKIN:  I don't know where the 232 came from,

9    but that could be a tax assessed value, which is usually

10   significantly lower, and especially on a property that's been

11   purchased recently, it usually takes a year or two for the new

12   assessment to even catch up to the new owner because it's often

13   been homesteaded before.  So I think that the 315 is probably a

14   reasonable estimate, which gives it equity of about 45,000.

15   So I think the Court would be safe to impose a $45,000 secured

16   bond.

17             THE COURT:  Is there any reason to think that the

18   defendant does not have cash in addition to that to secure a

19   further amount, based upon the representation here there's

20   $40,000 in a checking account?  And you're proposing, I'm sure,

21   that the defendant continue working.

22             MR. RANKIN:  Yeah, Judge, I mean, he's -- he's facing

23   a prison term, Your Honor.  One of his goals is to be able to

24   work so that he can support his family in the present and also

25   to allow them to save so that they can have income or savings

1    for while he's in prison so that they can -- because he's got a

2    three and a half year old child, Your Honor.

3              THE COURT:  Going back, if I could.

4              MR. RANKIN:  Yeah.

5              THE COURT:  Forgive me, I don't mean to be impolite,

6    but going back to the IBF Security, once he's incarcerated,

7    you know, it appears that he's looking at a mandatory minimum

8    term of imprisonment here, so at that point wouldn't he get

9    whatever he posts as security back to him and his family?

10             MR. RANKIN:  He would, Your Honor.

11             THE COURT:  Okay.

12             MR. RANKIN:  I assume.  I mean, I -- I have never

13   had -- you know, unlike State Court, I've never had anybody put

14   up cash in the Federal Court setting.  I don't even know

15   mechanically how that -- how that works.

16             THE COURT:  You've never had somebody put up cash?

17             MR. RANKIN:  No.

18             THE COURT:  The Court has imposed conditions where

19   people have --

20             MR. RANKIN:  I'm sure you have, Judge, I've just

21   never had that happen with -- either secured -- secured with

22   property or third party, you know, signatures or the

23   defendant's signature bond.

24             THE COURT:  I would say in the Court's experience

25   it's not atypical.  Certainly property is one way to do it, but

1    there are times where people have sufficient cash on hand that

2    they can do it one of a number of ways.

3              MR. RANKIN:  I've probably been more persuasive in

4    the past, Your Honor.

5              THE COURT:  Don't undersell yourself, Mr. Rankin.

6    You're always persuasive.  Mr. Streeter is very ably

7    represented, the Court will add.

8              Going to the employment, which I know you had begun

9    to argue, the concern here, Mr. Rankin, is the number of

10   devices in the home, any one of which would be accessible to

11   your client.  In fact, it's being proposed by the Government

12   that he have access and I heard you to begin arguing that he

13   should have such access.  What protocols could the Court put

14   into place that would assure the safety of the community, that

15   is children -- including children, rather, not just in the

16   community itself where he resides but worldwide?

17             MR. RANKIN:  Well, Judge, I think, you know, for

18   starters, you have to have some level of trust in his -- in his

19   family and in him not to access devices that you order him not

20   to access.  I think one way you can do that, of course, is to

21   order that the passwords be changed and that he not have access

22   to the passwords for those devices.

23             THE COURT:  Has he been engaging in the alleged

24   conduct in the home with his family members in the home?

25             MR. RANKIN:  No, Your Honor.  I believe it was -- it

```
1   was when -- oh, you mean -- you mean long ago, when the offense
2   was committed?
3            THE COURT:  2018 and 2019, was that occurring while
4   the defendant was at home?
5            MR. RANKIN:  I -- I don't know the answer to that,
6   Judge.
7            THE COURT:  Mr. Murray?
8            MR. MURRAY:  Yes, Your Honor.
9            THE COURT:  Okay.  So he was able to engage in this
10  activity without his wife being aware, presumably, I'm sure
11  that's the argument, certainly his children, but --
12           MR. MURRAY:  Your Honor, I could qualify that.
13  We know he was involved in the activity from IP addresses in
14  the home.  Whether his family was home or not --
15           THE COURT:  Okay.
16           MR. MURRAY:  -- you know --
17           THE COURT:  So I understand the argument, but you can
18  understand the concern of the Court at the same time.
19           MR. RANKIN:  Judge, I think -- I think a question of
20  him using his own device in 2018 or '19 to do something is
21  different than the concern over whether he would have access to
22  and use his wife's device or his teenage daughter's device.
23           THE COURT:  But he would have his own device to
24  utilize for business, so how would the Court establish a
25  protocol or a mechanism to prevent your client, as temptation
```

1  may call upon him to do --

2          MR. RANKIN:  Sure.

3          THE COURT:  -- to use his own device to engage in the

4  activity to which he's going to plead guilty today?

5          MR. RANKIN:  I think the Court does what it does in

6  all the other child porn related cases where we have defendants

7  on bond, you order the defendant not to access the internet for

8  any purpose other than work, not to access any illicit

9  material, and specifically in this case not to access any

10  social media.

11          THE COURT:  And how does the Court monitor that?

12          MR. RANKIN:  I don't think the Court can -- can

13  necessarily monitor.  I mean, I don't -- I don't think there's

14  a way to look over your shoulder 24 hours a day, but when you

15  weigh it against everything else that the Court has here,

16  there's a level of trust that's been earned by Mr. Streeter.

17  He's known by the -- known about this investigation for

18  many months, he could have fled or committed other offenses in

19  that time and he hasn't, he's been meeting with the Government

20  and fully cooperating with them already successfully and he's

21  agreed to a plea agreement and Information and shown up here in

22  court.  If he was going to do something inappropriate, he could

23  have done it months ago.  He had a passport, he had citizenship

24  in another country, he certainly could have fled, and I think

25  there's --

1          THE COURT:  There's two issues here, and I understand

2     the flight argument, but I don't want to conflate flight with

3     danger, so I'm focusing on -- for the moment on danger.

4          MR. RANKIN:  Well, I'm focused on danger in the sense

5     that there's a level of trust that the Court always has to have

6     in defendants who are out on bond, and there are only so many

7     mechanisms that can be in place to prevent somebody from doing

8     something the Court doesn't want them to do, and what I'm --

9     what I'm talking about with respect to what also applies to

10    flight, Your Honor, is those are things that he's done that

11    should give the Court some confidence that he's going to follow

12    your instructions in your orders.  It's impossible to be --

13    have somebody sitting next to him 24 hours a day looking over

14    his shoulder, but as the Government is comfortable with the

15    level of trust that they have in him, I think the Court can

16    have that level of trust to order him to do X, Y or Z or not do

17    X, Y or Z, and he's going to follow those orders.

18          THE COURT:  I mean, if I could just ask Mr. Murray,

19    and perhaps you know, Mr. Rankin, but I'll begin with

20    Mr. Murray, it's my understanding that the Adam Walsh

21    conditions or at least a typical condition attendant those

22    conditions is the defendant consents to the inspection of the

23    devices to which he has access.  Mr. Murray, is that your

24    understanding as well?

25          MR. MURRAY:  Yes, Judge.  Sometimes judges order the

```
 1   whole internet removed from the home, but in the alternative,
 2   yes, that's my understanding.
 3            THE COURT:  Mr. Rankin -- thank you very much,
 4   Mr. Murray -- coming back to you, I know that defendant has a
 5   son and a daughter.  Do they participate in the educational
 6   system virtually now in the COVID environment?
 7            MR. RANKIN:  Not the son, he's too young, but -- does
 8   your daughter go to school?
 9            THE DEFENDANT:  Yes.
10            MR. RANKIN:  In person, or --
11            THE DEFENDANT:  In person, yes.
12            MR. RANKIN:  And does she have to use her electronic
13   device to do homework and whatnot?
14            THE DEFENDANT:  Yes, she does.  She has one online
15   class.
16            MR. RANKIN:  Okay.
17            THE COURT:  Would your client consent to inspection
18   of all the devices in the home --
19            THE DEFENDANT:  Yes.
20            MR. RANKIN:  Yes.
21            THE COURT:  -- as a part of the condition of release?
22            MR. RANKIN:  Yes, Your Honor.
23            THE COURT:  Okay.
24            MR. MURRAY:  Judge, may I also add something?
25            THE COURT:  Sure.
```

```
 1          MR. MURRAY:  Your Honor, I guidelined Mr. Streeter in
 2   this case and he's in the level 50s, which as Your Honor knows
 3   is not on the chart, he's got a stat maximum of life.
 4          THE COURT:  And he's 63.
 5          MR. MURRAY:  And he's 63.  He's cooperating, he --
 6   I cannot make a representation at this time that he's going to
 7   get a substantial assistance motion, but he's well-positioned
 8   for one, so to the extent that that bears on Your Honor's
 9   calculus, if Mr. Streeter commits a new law violation after his
10   plea, all bets are off, and so in terms of incentive, you know,
11   not to do that, I think that's about as strong an incentive as
12   you can have.  I mean, if he commits a pretrial violation that
13   involves, you know, online exploitation of minors, it's over,
14   I mean, I think effectively Judge Covington is probably going
15   to launch him, and so -- and he's not going to break the
16   min mands.
17          THE COURT:  You used the phrase "launch him."
18          MR. MURRAY:  Yes, and so just to the extent --
19   I wanted the Court to be aware of that.  I think there is sort
20   of an added level of disincentive for him to do that.
21          THE COURT:  Well, Mr. Rankin, your advocacy, as
22   always, is persuasive.
23          The Court will impose the following conditions,
24   Mr. Streeter.  The Court will release you.  The Government has
25   not moved to detain you and the Court has limited options when
```

 1   that situation arises.  You're to report to Pretrial Services

 2   as directed.  Your travel will be restricted to the Middle

 3   District of Florida.  You're not to have any contact with any

 4   victim or witness outside or without the presence of your

 5   counsel.  You're not to possess any firearms, weapons or

 6   destructive devices.  I will put you on location monitoring,

 7   you'll have a bracelet and you'll wear it and be monitored by

 8   GPS.  I'll also direct that you surrender your passport and

 9   that you not apply for any additional travel documents.  You're

10   not to have any unsupervised contact with any child under the

11   age of 18 outside of your own children.

12          Mr. Murray, Mr. Rankin, as far as the devices in the

13   home, collectively between the two of you I believe it's been

14   proposed that the defendant be allowed access to electronic

15   devices only for the purposes of work, that he's not to access

16   or utilize any social media nor engage in any illegal conduct

17   of any kind using those devices.

18          Mr. Murray, you may have included additional

19   conditions or components of that.  Did I leave something out?

20          MR. MURRAY:  No, Your Honor.

21          THE COURT:  And, Mr. Rankin, you had also weighed in

22   on that matter.  Did I leave anything out?

23          MR. RANKIN:  Judge, just two things.  I think with

24   respect to his use of electronic devices, to the extent

25   you think it's necessary to say so, he needs to be able to

1    communicate with Pretrial Services and counsel, and also -- and

2    I -- I think -- I don't believe the Government has an objection

3    to this.  His workplace is in Fort Lauderdale and he's only

4    there on Mondays and Tuesdays, so I don't -- I don't think they

5    have an objection to him being able to travel on Mondays and

6    Tuesdays to the Southern District of Florida.

7              THE COURT:  Okay.

8              MR. RANKIN:  I think -- Judge, I don't have to say

9    any more about it.

10             THE COURT:  No, that's fine by me.

11             Mr. Murray, I want to make sure the Government has no

12   objection.

13             MR. MURRAY:  Yes, Your Honor, the electronic

14   monitoring, I think, allays our concerns in that regard.

15             THE COURT:  Thank you, Mr. Murray.

16             Ms. Watson, there's no need for you to come to the

17   lectern, but if you would speak loudly enough so that it can be

18   picked up by the recording system.  Does the Court need to add

19   any specific language to the travel restriction to allow for

20   him to leave the district for work?

21             PRETRIAL SERVICES:  If you would, either -- you can

22   extend the travel to the Southern District of Florida for work

23   purposes.  I think that may suffice for the location monitoring

24   officer.

25             THE COURT:  Mr. Murray, any objection to the

 1  suggestion by Pretrial that the travel restriction to the
 2  Middle District of Florida contain an exception for travel to
 3  the Southern District of Florida for purposes of work?
 4          MR. MURRAY:  No objection, Your Honor.
 5          THE COURT:  Mr. Rankin, does that satisfy your
 6  concern?
 7          MR. RANKIN:  I believe -- I believe so, Judge.
 8  I just want to make sure with Pretrial that that's not going to
 9  require him to always contact Pretrial for advance permission,
10  because sometimes, you know, they're busy, they don't get that
11  right away.  Just so that it's a, you know, general ability to
12  travel for work to the Southern District.
13          THE COURT:  That's the way I intend it to be,
14  Mr. Rankin.
15          MR. RANKIN:  Okay.
16          THE COURT:  So that he can travel to the Southern
17  District of Florida as long as it's for work purposes.
18          MR. RANKIN:  That's fine.
19          THE COURT:  If the Court were to find differently, he
20  would be in violation of his conditions.
21          MR. RANKIN:  Thank you, Judge.
22          THE COURT:  So I heard you to say, Mr. Rankin, that
23  the restriction of access to electronic devices allow for work
24  contact or communications with counsel and the Court.
25          MR. RANKIN:  Correct, Your Honor.

1          THE COURT:  Okay.

2          MR. RANKIN:  And -- and I -- I assume he can contact

3    his wife or his daughter about picking them up -- picking her

4    up from school, things like that?

5          THE COURT:  And family members.

6          MR. RANKIN:  Perfect.  Thank you, Judge.

7          THE COURT:  So to be clear, the defendant is not

8    allowed to have access or use any electronic devices with the

9    exception of access or utilization of such devices for purposes

10   of work, communication with counsel and/or the Court and/or

11   family members.

12         MR. RANKIN:  That's great.  Thank you, Judge.

13         THE COURT:  Specifically, the defendant is instructed

14   that he's not allowed to access or utilize any social media for

15   any purpose and that he's not to utilize or access any

16   electronic devices for any illegal conduct of any kind.

17          It will also be a condition, Mr. Streeter, that the

18   Court's approval of this limited access to electronic devices

19   include your consent, which your lawyer has offered, to

20   inspection of said devices, including hard drives or any

21   electronic data storage medium, to confirm adherence to these

22   conditions.

23          Any objection, Mr. Rankin?

24         MR. RANKIN:  No, Your Honor.

25         THE COURT:  The Pretrial Services Office must conduct

1  any inspection in a manner no more intrusive than necessary to

2  ensure compliance with this condition.  This condition might

3  affect a third-party, including the defendant's employer.  The

4  defendant must inform the third-party of this condition

5  restriction.  I will additionally impose a $50,000

6  fully-secured bond, either by property and/or cash.

7       Mr. Streeter, Mr. Rankin is very experienced and

8  you're very ably represented, as I mentioned before.  He will

9  advise you of what you need to do in that regard.

10      Mr. Rankin, obviously my courtroom deputy can handle

11  any questions you may have as to the documentation necessary

12  for purposes of posting the property.

13      MR. RANKIN:  Yes, Your Honor.  I'll follow up with

14  her and take care of it.

15      THE COURT:  Okay.  Other than that, Mr. Murray,

16  anything additional on release conditions?

17      MR. MURRAY:  No, Your Honor.  That was very thorough.

18  Thank you.

19      THE COURT:  Thank you.

20      Mr. Rankin?

21      MR. RANKIN:  No, Your Honor.  Thank you.

22      THE COURT:  Thank you.

23      And, Ms. Watson, anything further from Pretrial, any

24  questions?

25      PRETRIAL SERVICES:  No, Your Honor.

```
1              THE COURT:  Okay.  Ms. Watson, thank you for being
2      here this morning and --
3              PRETRIAL SERVICES:  (Inaudible.)
4              THE COURT:  Absolutely.  Thank you, Ms. Watson,
5      again.
6              Mr. Streeter, with respect to the release conditions,
7      the Court has allowed you to be released, but I want to make
8      sure that you understand that there will be significant
9      consequences should you violate any conditions of your release.
10     According to Mr. Murray, you could sacrifice any benefit that
11     you may have obtained through your cooperation and you'll be
12     subject to a number of significant consequences and penalties
13     in addition to that that will be set forth in the pretrial --
14     or the release paperwork, rather, that you'll be asked to sign.
15     The Court does not have that paperwork in front of it, but one
16     of the consequences includes, as I recall, a sentence of up to
17     ten years imprisonment that would run consecutively to any term
18     of incarceration that would be imposed on the underlying
19     defense -- offense, rather.  Do you understand?
20             THE DEFENDANT:  Yes, Your Honor.
21             THE COURT:  And it would obviously include being
22     detained prior to trial, or prior to sentencing.  Do you
23     understand?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  This is serious business, being in
```

1    Federal Court, Mr. Streeter, and the Court takes its release

2    conditions seriously.  Do you understand?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  It's also my understanding, moving along

5    to the plea here, that you wish to enter a guilty plea today;

6    is that correct?

7             THE DEFENDANT:  That's correct, Your Honor.

8             THE COURT:  Before I can accept your guilty plea, the

9    law requires that I make sure that you are pleading guilty

10   freely and voluntarily and that there's an independent factual

11   basis to support your plea.  To do that this morning I am going

12   to ask you some questions both about yourself and your case.

13   If for whatever reason, Mr. Streeter, you don't understand a

14   question that I ask of you, please let me know and I'll do my

15   best to explain myself better.  Do you understand?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  If you could do me the kind favor,

18   Mr. Streeter -- I know you're wearing a mask, but if you would

19   pull the microphone closer to you.  That's the method that we

20   use to memorialize what is said in court.  I appreciate it.

21            Also, if at any point during the course of the

22   proceeding you wish to speak with your lawyer, Mr. Rankin,

23   please let me know that as well and I'll provide you with

24   whatever opportunity you need to confer with him.  Do you

25   understand?

```
 1            THE DEFENDANT:  Yes, Your Honor.
 2            THE COURT:  To impress upon you the importance of
 3  your answers to my questions, I am going to ask you those
 4  questions while you're under oath.  If you knowingly answer any
 5  of my questions falsely after having taken the oath, you could
 6  be subject to a prosecution for perjury or making a false
 7  statement.  Do you understand?
 8            THE DEFENDANT:  Yes, Your Honor.
 9            THE COURT:  Madam Clerk, if you could kindly
10  administer the oath.
11            COURTROOM DEPUTY:  Please stand and raise your right
12  hand.
13            Do you solemnly swear or affirm, under the penalty of
14  perjury, that the statements that you will give in this cause
15  will be the truth, the whole truth and nothing but the truth?
16            THE DEFENDANT:  I do.
17            COURTROOM DEPUTY:  Thank you.
18            Please state your name for the record.
19            THE DEFENDANT:  Christopher John Streeter.
20            THE COURT:  Mr. Streeter, could you tell us how old
21  you are, please.
22            THE DEFENDANT:  63.
23            THE COURT:  How far did you go in school?
24            THE DEFENDANT:  I have a Bachelor's degree in
25  marine engineering.
```

1          THE COURT:  So you have a Bachelor's degree in --

2          THE DEFENDANT:  Marine engineering.

3          THE COURT:  I take it that you can read and right in

4    the English language?

5          THE DEFENDANT:  Yes, I can.

6          THE COURT:  Have you ever been treated for any mental

7    illness or any addiction to a narcotic drug?

8          THE DEFENDANT:  No.

9          THE COURT:  Are you currently under the influence of

10   any drug, medication or alcoholic beverage?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Is your mind clear this morning?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you clearly understand where you are,

15   what you are doing and the importance of this proceeding?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  Is there anything else that might affect

18   your ability either to understand the nature of the proceedings

19   or to ably assist in your defense that you think the Court

20   should know about?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Mr. Rankin, any concerns with your

23   client's competency?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  In brief, could you explain your answer,

 1   focusing on, among other things, your client's ability to

 2   understand the nature of the proceedings and to ably assist in

 3   his defense.

 4           MR. RANKIN:  Judge, Mr. Streeter has always been

 5   lucid, understood our discussions about the case and the law.

 6   I believe he's competent to proceed and understand your

 7   questions and understand the legal process.

 8           THE COURT:  Thank you.

 9           And, Mr. Murray, based on your investigation and

10   interactions with the defendant, any issues with respect to his

11   competency?

12           MR. MURRAY:  No concerns, Your Honor.

13           THE COURT:  Thank you.

14           Mr. Streeter, you have the right to plead guilty

15   before the District Judge assigned to your case.  If you wish,

16   however, you can enter your guilty plea before me.  I am what

17   is known as a magistrate judge, which is a judge of lesser

18   authority.  The District Judge assigned to your case is

19   ultimately the one who will sentence you.  You and Mr. Rankin

20   have signed a form this morning indicating that you wish to

21   proceed with your guilty plea before me.  Before signing this

22   form did you discuss the matter of pleading guilty before me

23   with your lawyer?

24           THE DEFENDANT:  Yes, I did, Your Honor.

25           THE COURT:  Is that still what you would like to do?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Did anyone threaten, coerce or otherwise

3    force you in any way to get you to consent to pleading guilty

4    before me?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Did anyone make any promises to you to

7    get you to consent to pleading guilty before me?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  It's my understanding that you'll be

10   pleading guilty to an Information this morning, Mr. Streeter.

11   Because pleading guilty to an Information rather than an

12   Indictment implicates a Constitutional right you have, I'm

13   going to review that matter with you now.

14          In particular, you have the Constitutional right to

15   be charged by way of an Indictment.  An Indictment is a formal

16   charge that is returned by a grand jury.  A grand jury consists

17   of between 16 and 23 individuals who have been selected at

18   random from the community.  They meet in private and decide

19   whether there's probable cause to believe that a defendant in

20   this case has committed the crime that is alleged to have

21   occurred in that matter.  The grand jury can return an

22   Indictment only if at least 12 of its members concur in the

23   probable cause finding.

24          An Information, on the other hand, which is what is

25   proposed to be used here, is a formal accusation by the

1  prosecutor, in particular the United States Attorney, charging

2  you with a criminal offense.  Unlike with an Indictment, the

3  prosecutor does not present the case to a grand jury when an

4  Information is involved for purposes of the probable cause

5  determination, therefore, to be charged by Information you must

6  waive your right to be charged by Indictment.

7          Do you understand your right to be charged by way of

8  an indictment and to have your case considered by a grand jury?

9          THE DEFENDANT:  Yes, I do, Your Honor.

10          THE COURT:  Do you wish to waive your right to

11  proceed by Indictment and instead go forward by way of

12  Information?

13          THE DEFENDANT:  Yes, I do, Your Honor.

14          THE COURT:  I have before me a Waiver of Indictment

15  form that appears to bear your signature that has been filed at

16  document 3 in the case.  Did you file -- did you review this

17  document with your lawyer before you signed it?

18          THE DEFENDANT:  Yes, I did, Your Honor.

19          THE COURT:  And is that in fact your signature on the

20  document?

21          THE DEFENDANT:  Yes, it is, Your Honor.

22          THE COURT:  Mr. Rankin, did you review this form in

23  detail with your client before he signed it?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And is that your signature on the form?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Based upon the representations of

3     Mr. Streeter and his lawyer, I will accept the Waiver of

4     Indictment.  The record should reflect that I am affixing my

5     original signature to that waiver.

6          The record should reflect that I have now signed the

7     waiver.

8          Mr. Streeter, have you had an opportunity to review

9     all of the facts and the evidence in this case with your

10    lawyer?

11         THE DEFENDANT:  Yes, I have, Your Honor.

12         THE COURT:  Have you discussed with your lawyer all

13    of your options in the case, including your option of taking

14    the case to trial?

15         THE DEFENDANT:  Yes, I have, Your Honor.

16         THE COURT:  Are you fully satisfied with the advice

17    and representation you have received from your lawyer?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  It's my understanding as well that you've

20    entered into a written plea agreement with the Government.

21    I have a copy of that plea agreement in front of me now.

22    It's found at document 5.  It's my understanding that you have

23    initialed each page of your plea agreement and signed the end.

24    Is that correct?

25         THE DEFENDANT:  That's correct, Your Honor.

1          THE COURT:  Did you read the plea agreement in its

2    entirety before you initialed each page and before you signed

3    the end?

4          THE DEFENDANT:  Yes, I did, Your Honor.

5          THE COURT:  And did you review the plea agreement in

6    its entirety with your lawyer before you initialed each page

7    and before you signed the end?

8          THE DEFENDANT:  Yes, I did, Your Honor.

9          THE COURT:  I'm now going to go through your

10   plea agreement in summary fashion, and I'll discuss with you a

11   number of provisions in the plea agreement.  My goal is to make

12   sure that you understand the terms of your plea agreement and

13   that it contains all the promises the Government has made to

14   you to persuade you to enter a guilty plea in this case.

15   I will not review, however, every single paragraph of the

16   plea agreement.

17          When I have completed my review, I will ask both of

18   you and Mr. Rankin if there are any additional provisions that

19   you would like me to cover, and if so I will be happy to do so.

20   Do you understand?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Now, beginning with the first paragraph

23   of the plea agreement, found on page 1, you're agreeing to

24   enter a guilty plea in this case to an Information, in

25   particular Count One of that Information that charges you with

1    sex traffic -- sex trafficking of children, in violation of the

2    statutory provisions cited.

3            I'm going to pass over for the moment paragraphs 2, 3

4    and 4.  I will cover those matters later during our colloquy.

5            Turning to paragraph 5 on page 3, if the Court

6    accepts this plea agreement the Government promises that it

7    will not charge you, Mr. Streeter, with any other Federal

8    criminal offenses that it knew about at the time of the

9    execution of your plea agreement and that relate to the conduct

10   that gave rise to the plea agreement.

11           By way of paragraph 6 you've advised that you will

12   waive your right to be charged by way of an Indictment before a

13   Federal grand jury, and that's a matter that we have already

14   covered by way of paragraph 7, which you'll find begins at the

15   bottom of page 3.  Pursuant to the statutory provisions cited,

16   you agree to make full restitution, if any, to the victim or

17   victims of the offense charged in Count One of the Information.

18   You additionally agree by way of paragraph 8, pursuant to the

19   statutory provisions cited, to make full restitution, if any,

20   to additional persons established at sentencing to be victims

21   of your related conduct to be calculated as provided for in the

22   statutory provisions cited.

23           By way of paragraph 9, in the event no adverse

24   information is received, the Government further promises to

25   recommend to the Court that you receive a two level downward

1    adjustment for your acceptance of responsibility.  The

2    Government further promises in that paragraph, among other

3    things, that if certain conditions are met, it will file a

4    motion for a downward adjustment of one additional level,

5    again, for your acceptance of responsibility.

6              By way of paragraph 10, which you'll find on page 5,

7    the Government additionally agrees to recommend to the Court

8    that you be sentenced within your applicable advisory guideline

9    range as determined by the Court, pursuant to the United States

10   Sentencing Guidelines.

11             By way of paragraph 11, which also begins on page 5,

12   for your part, Mr. Streeter, you agree to cooperate fully with

13   the Government in the investigation and prosecution of other

14   persons and to testify, subject to a prosecution for perjury or

15   making a false statement, fully and truthfully before any

16   Federal Court or Federal grand jury in connection with the

17   charges in this case and other matters.

18             If your cooperation, Mr. Streeter, is completed prior

19   to your sentencing, the Government agrees to consider whether

20   such cooperation qualifies as what is known as substantial

21   assistance, in accordance with the Government's policies,

22   warranting the filing of a motion at the time of your

23   sentencing recommending a downward departure from your

24   applicable advisory guideline range, or the imposition of a

25   sentence below any statutory mandatory minimums, or both, and

1    the Government, Mr. Streeter, makes a similar promise with

2    respect to any cooperation you might provide after your

3    sentencing.

4         It's important that you understand that, as set forth

5    more fully in paragraph 11, that the determination,

6    Mr. Streeter, as to whether you have provided substantial

7    assistance and what type of motion, if any, might be filed in

8    connection with any such substantial assistance rests solely

9    with the United States Attorney for the Middle District of

10   Florida and you agree that you cannot and will not challenge

11   that determination in any way.  Do you understand?

12        THE DEFENDANT:  Yes, I do, Your Honor.

13        THE COURT:  Paragraph 12, among other things, sets

14   forth the consequences of what will occur if your cooperation

15   is not full, complete and truthful.

16        By way of paragraph 13, which you'll see is on

17   page 9, among other things, it instructs that you have been

18   advised and understand that under the Sex Offender Registration

19   and Notification Act you must register and keep the

20   registration current in each of the following jurisdictions:

21   The location of your residence, the location of your

22   employment, and if you are to become a student again, the

23   location of your school.

24        Paragraph 3 -- 13, rather, further makes clear, among

25   other things, that you understand that the failure to comply

1   with these obligations subjects you to prosecution for failure

2   to register under Federal law, as set forth more fully in that

3   paragraph, and that such offense is punishable by a fine or

4   imprisonment or both.

5          By way of paragraph 14, which pertains to the

6   forfeiture of assets, you agree to forfeit to the United States

7   immediately and voluntarily any and all assets and property or

8   portions thereof that are subject to forfeiture, pursuant to

9   the statutory provisions cited, whether in the possession and

10  control of the Government, yourself or your nominees.

11         By way of paragraph -- it's referenced as paragraph

12  35.  I believe it's paragraph 15.  In any event, it's the

13  paragraph entitled Abandonment of Property - Computer

14  Equipment, which begins on page 12.  Among other things, by way

15  of that paragraph you and the Government agree that any

16  computer equipment, as defined in the statutory provisions

17  cited, seized from you and currently in the custody or control

18  of Homeland Security Investigations or another appropriate

19  agency, were properly seized and are subject to forfeiture to

20  the Government under the statutory provisions cited and/or that

21  that computer equipment and peripherals constitute evidence,

22  contraband or fruits of the crime for which you are pleading

23  guilty to today.

24         That paragraph further provides, among other things,

25  that you state under penalty of perjury that you are the sole

1    and rightful owner of the property and that you voluntarily

2    abandon all right and claim to and consent to the destruction

3    of a particular piece of equipment known as the HP Pavilion

4    laptop.

5              The second half of your plea agreement, Mr. Streeter,

6    begins on page 13, the first paragraph of which pertains to

7    Restitution, Special Assessment and Fine.  Among other things,

8    that paragraph makes clear that you understand and agree that

9    the Court, in addition to or in lieu of any other penalty,

10   shall order you to make restitution to any victim of the

11   offense, pursuant to a particular statutory provision, and it

12   may order you to make restitution to any victim of the offense

13   pursuant to a different statutory provision.

14             Paragraph 1 on page 13 further makes clear, among

15   other things, that on each count to which a plea of guilty is

16   entered, here Count One of the Information, the Court shall

17   impose a mandatory special assessment of $100 that will be due

18   on the date of sentencing.

19             Paragraph 2, which begins on the bottom of page 13,

20   states that you understand that the offense to which you are

21   pleading guilty provides for the imposition of a term of

22   supervised release upon your release from any term of

23   imprisonment, and if you should violate any conditions of your

24   release you will be subject to a further term of imprisonment.

25             Mr. Murray, there's an immigration consequence

1   paragraph.  Any reason to think that that applies here?

2           MR. MURRAY:  No, Your Honor.  I believe that

3   Mr. Streeter is a naturalized citizen.

4           THE COURT:  Okay.  Moving along then to paragraph 6,

5   which begins on the bottom of page 15, that paragraph,

6   Mr. Streeter, reiterates a representation that is made in

7   various forms at various points in the plea agreement.  Among

8   other things, it confirms that the Court is neither a party to

9   nor bound by this plea agreement.  What that means,

10  Mr. Streeter, is that the Court may accept or reject your

11  plea agreement or defer, that is postpone a decision on the

12  matter until it has had an opportunity to consider a

13  presentence report that will be prepared in anticipation of

14  your sentencing by the United States Probation Office.

15          Paragraph 6 further confirms, among other things,

16  that you understand and acknowledge that although the parties

17  are permitted to make recommendations and present arguments to

18  the Court, that in the end your sentence will be determined

19  solely by the Court.

20          Paragraph 6 further makes clear, among other things,

21  that while the Government has agreed in your plea agreement to

22  make certain recommendations on your behalf in connection with

23  your sentencing, that those representations are not binding on

24  the Court and that the Court -- should the Court reject any of

25  those recommendations, you will not be permitted to withdraw

```
 1    your guilty plea pursuant to this plea agreement.  Do you

 2    understand?

 3              THE DEFENDANT:  Yes, I do, Your Honor.

 4              THE COURT:  There's a waiver of your right to appeal

 5    your sentence.  It's another provision that I will cover later.

 6              Moving ahead to paragraph 8, which you'll find on the

 7    top of page 17, that paragraph confirms, among other things,

 8    that this agreement is limited to the Office of the

 9    United States Attorney for the Middle District of Florida and

10    does not bind any other Federal, State or local prosecuting

11    authorities.

12              Mr. Rankin, other than the Factual Basis section, the

13    waiver of the right to appeal the defendant's sentence, and

14    paragraphs 2, 3 and 4, all of which I will cover later, are

15    there any additional paragraphs in the plea agreement that you

16    would like me to cover?

17              MR. RANKIN:  No, Your Honor.

18              THE COURT:  Thank you, Mr. Rankin.

19              Mr. Streeter, other than the paragraphs to which

20    I just referred with Mr. Rankin, are there any additional

21    paragraphs that you would like me to cover?

22              THE DEFENDANT:  No, Your Honor.

23              THE COURT:  Do you understand all of the terms of

24    your plea agreement, Mr. Streeter, including those that I've

25    reviewed with you so far?
```

1            THE DEFENDANT:  Yes, I do, Your Honor.

2            THE COURT:  Has anyone made any other promises or

3     representations to you outside of those outlined in the

4     plea agreement in order to persuade you to enter a guilty plea

5     in this case?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  I'll ask of both the Government and the

8     defense if any other promises or representations have been made

9     to the defendant in connection with his guilty plea outside of

10    those outlined in the plea agreement.

11            Mr. Murray?

12            MR. MURRAY:  No, Your Honor.

13            THE COURT:  Thank you.

14            Mr. Rankin?

15            MR. RANKIN:  No, Your Honor.

16            THE COURT:  Thank you to you both.

17            Mr. Streeter, has anyone threatened, coerced or

18    otherwise forced you in any way to get you to plead guilty in

19    this case?

20            THE DEFENDANT:  No, Your Honor.

21            THE COURT:  Are you pleading guilty freely and

22    voluntarily?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Is your decision to plead guilty,

25    Mr. Streeter, a decision that you have made only after having

1  had a full and ample opportunity to discuss the matter with

2  your lawyer, Mr. Rankin?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  The offense to which you are pleading

5  guilty, Mr. Streeter, is a felony offense.  I want to make sure

6  that you understand that once you are adjudged guilty of that

7  offense, that adjudication may deprive you of certain valuable

8  civil rights you have, such as the right to vote, the right to

9  hold public office and the right to possess any kind of a

10  firearm.  Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  The penalties to which you are subject is

13  set forth -- or are set forth, rather, in your plea agreement

14  at paragraph 2.  It's one of the paragraphs that I said I would

15  cover later.  I'm going to cover it with you now.

16              In particular it sets forth that Count One carries a

17  mandatory minimum term of imprisonment of 15 years, a maximum

18  term of imprisonment of life, a maximum fine of $250,000, or

19  both, a term of supervised release of not less than five years

20  and up to life, and a mandatory special assessment of $100 that

21  will be due on the date of sentencing.  In addition, it sets

22  forth that you will be made to pay an additional special

23  assessment in the amount of $5,000, as set forth in the

24  statutory provision that is cited in that paragraph.

25              Furthermore, as that paragraph specifies, a violation

1  of the terms and conditions of your -- it says here supervised

2  release, Mr. Murray.  Is that what you envision it to state?

3          MR. MURRAY:  Yes, Your Honor.

4          THE COURT:  It further sets forth that a violation of

5  the terms and conditions of your supervised release, which

6  would follow any term of imprisonment, carries a maximum

7  sentence of not more than five years imprisonment as well as

8  the possibility of an additional term of supervised release,

9  or, as it states, if the violation is of a felony under one of

10 the chapters cited in the paragraph, or a violation of the

11 statutory section cited, the maximum sentence would be not less

12 than five years imprisonment as well as the possibility of an

13 additional term of supervised release.  In addition, it

14 emphasizes that the Court shall order you to make restitution

15 to any victim of the offense, as set forth more particularly in

16 the plea agreement.

17          Do you understand all of the possible punishment

18 consequences of your guilty plea, Mr. Streeter, including those

19 that I've reviewed with you this morning?

20          THE DEFENDANT:  Yes, I do, Your Honor.

21          THE COURT:  And have you reviewed all of the various

22 penalties set forth in paragraph 2 of your plea agreement on

23 pages 1 and 2 with your lawyer, Mr. Rankin?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you understand them all?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  I'm going to take a few minutes now,

3   Mr. Streeter, to explain the process that will occur after

4   today's hearing.

5          If the Court accepts your guilty plea, it will

6   instruct a probation officer to prepare a presentence report.

7   It's the same report to which I referred earlier.  The purpose

8   of the presentence report is to assist the District Judge in

9   deciding what is a fair and appropriate sentence in your case.

10          The presentence report will contain a number of

11   parts, one part will describe the facts of your case, another

12   part will describe how the advisory sentencing guidelines apply

13   to your case, and yet another part will describe your personal

14   history, including any criminal record you may have.  It's

15   important that you understand that before the Court sees this

16   report, you and Mr. Rankin will have an opportunity to review

17   it and to object to any portions of the report with which you

18   disagree.  If the probation officer who drafted the report

19   declines to change the report to meet your objections, you'll

20   have an opportunity to take your objections directly to the

21   sentencing judge, that is, the District Judge, for her to hear,

22   and just as you have a right to review and object to the

23   presentence report, so too does the Government.

24          Do you understand this part of the process as I've

25   described it to you?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  At the time of your sentencing, the

3    District Judge will give you, Mr. Rankin and the prosecutor an

4    opportunity to present evidence or information that are

5    relevant to the sentencing proceeding.  The District Judge will

6    also rule on any outstanding objections made by either yourself

7    or the Government to the presentence report, and she will

8    determine what your advisory sentencing guideline range is.

9    She will then look to the sentencing statute and the factors it

10   contains and ultimately give you a sentence that she believes

11   is fair and reasonable under the law.

12          Do you understand this part of the process as I've

13   described it to you?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, Mr. Rankin is an experienced

16   attorney, and he may have given you an opinion as to what he

17   believes your advisory guideline range might be and ultimately

18   what your sentence might be as well.  It's important that you

19   understand that if your sentence turns out to be different than

20   what you expect, you will not be allowed to withdraw your

21   guilty plea.  Do you understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Now, with respect to the sentencing

24   guidelines themselves, have you reviewed the sentencing

25   guidelines with Mr. Rankin?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  I want to emphasize, as I've attempted to

3    do throughout this proceeding, that the sentencing guidelines

4    are advisory.  What that means is, Mr. Streeter, the District

5    Judge will have the authority to depart upward or downward from

6    the advisory guideline range she deems to apply in your case,

7    subject to any mandatory minimums that apply.  Do you

8    understand?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  I mentioned before that your

11   plea agreement has an appellate waiver paragraph that I would

12   cover later.  I'm going to cover that with you now.  That

13   paragraph is found on page 16, paragraph 7.  By way of that

14   paragraph you are largely waiving your right to appeal your

15   sentence, Mr. Streeter.  In particular, you will only be

16   allowed to appeal your sentence if one of four events occurs:

17   First, that the District Judge upwardly departs from the

18   advisory guideline range that she deems to apply in your case;

19   or, second, the District Judge imposes a sentence that is

20   greater than the maximum sentence under the charging statute;

21   or, third, your sentence violates the Eighth Amendment of the

22   Constitution; or, fourth, the Government appeals your sentence.

23          Do you understand, Mr. Streeter, that by way of your

24   plea agreement, in particular paragraph 7 on page 16, you are

25   giving up or waiving your right to appeal your sentence unless

1   one of the four events that I just described occurs?

2        THE DEFENDANT:  Yes, Your Honor.

3        THE COURT:  By pleading guilty this morning you are

4   not only pleading guilty, or admitting, rather, the criminal

5   charge contained in Count One of the Information, you are also

6   giving up a number of important Constitutional rights.  I'm

7   going to go over those rights with you now to make sure that

8   you understand that you have these rights and also that you

9   understand that you'll be waiving or giving them up by pleading

10  guilty.

11        You have the right to persist in your plea of

12  not guilty.  You also have the right to a jury trial at which

13  the Government would be required to prove the charges against

14  you beyond a reasonable doubt and to the unanimous satisfaction

15  of a jury.  You have the right to the effective assistance of

16  counsel at all stages of your case, including at trial.  If you

17  could not afford an attorney, you have the right to have an

18  attorney appointed to represent you at no cost.  You have the

19  right to see and hear all the witnesses who testify against you

20  and to cross-examine them to challenge their testimony in your

21  defense.  You also have the right to testify in your own

22  defense, or, if you so choose, not to testify, and the jury

23  would be specifically instructed that it could not hold it

24  against you in any way that you decided not to testify.  And

25  finally you have the right to issue subpoenas to compel the

1    attendance of witnesses to come to the courthouse and to

2    provide testimony which you believe might be favorable to your

3    case.

4              Do you understand that you have these important

5    Constitutional rights?

6              THE DEFENDANT:  Yes, I do, Your Honor.

7              THE COURT:  Do you understand that by pleading guilty

8    today there will be no trial and you'll be waiving all of these

9    Constitutional rights?

10             THE DEFENDANT:  Yes, I do, Your Honor.

11             THE COURT:  The Information in this case charges you

12   with a single felony offense.  In particular it charges, in sum

13   or substance, that from in or around September of 2018 through

14   in or around June of 2019, here in the Middle District of

15   Florida and elsewhere, that you did, in and affecting

16   interstate commerce, knowingly recruit, entice, harbor,

17   transport, provide, obtain, maintain, patronize, and solicit a

18   minor, namely Victim-1, knowing and in reckless disregard of

19   the fact that Victim-1 was under the age of 18, and knowing

20   that Victim-1 would be caused to engage in a commercial sex

21   act; Victim-1 having been recruited, enticed, harbored,

22   transported, provided, obtained, patronized, and solicited

23   while being under 14 years old, all in violation of the

24   statutory provisions cited.

25             Mr. Rankin, do you waive a full and formal reading of

1    the Information?

2              MR. RANKIN:  Yes, Your Honor.  And with respect to

3    even the factual basis, if it satisfies the Court, Mr. Streeter

4    is happy to agree that all of the facts that are in the

5    plea agreement are agreed to, the plea agreement that he

6    signed.

7              THE COURT:  Thank you, Mr. Rankin.  I will cover that

8    momentarily.

9              This particular charge has certain essential elements

10   that the Government would have to prove if your case went to

11   trial.  Those elements are set forth in paragraph 4 of your

12   plea agreement, which you'll find begins on page 2, it's one of

13   the paragraphs which I said I would review earlier -- or later,

14   rather.

15             The elements of Count One are as follows.

16             First:  That you knowingly recruited, enticed,

17   harbored, transported, provide -- provided, rather, obtained,

18   maintained, patronized, or solicited, by any means, a person,

19   or knowingly aided and abetted another in doing so.

20             Second:  That you knew that the person would be

21   caused to engage in a commercial sex act.

22             Third:  That you did so knowing or in reckless

23   disregard of the fact that the person was under the age of 18.

24             Fourth:  That the acts that you committed were in or

25   affecting interstate commerce.

1          And, fifth:  That you recruited, enticed, harbored,

2     transported, provided, obtained, patronized, or solicited, a

3     person who had not attained the age of 14 years at the time of

4     the offense.

5          And with respect to that latter element, for purpose

6     of the mandatory minimum term of imprisonment of 15 years and

7     the maximum term of imprisonment of life, it would be necessary

8     for the Government to establish that Victim-1, the person

9     recruited, enticed, harbored, transported, provided, obtained,

10    patronized, or solicited, had not attained the age of 14 years

11    at the time of the offense charged in Count One.

12          Do you understand, Mr. Streeter, if your case went to

13    trial the Government would be required to prove each and all of

14    these essential elements that I just reviewed beyond a

15    reasonable doubt and to the unanimous satisfaction of a jury?

16          THE DEFENDANT:  Yes, I do, Your Honor.

17          THE COURT:  Mr. Murray, I have looked at the Eleventh

18    Circuit Pattern Jury Instructions, and the elements here are a

19    more fulsome set than that included in the Pattern Jury

20    Instructions.  I'm just curious where you derived that from.

21          MR. MURRAY:  Your Honor, what do you mean by

22    "fulsome"?

23          THE COURT:  They have additional elements.

24          MR. MURRAY:  Well, Your Honor, they are a combination

25    of just pulling directly from the statute and also D.O.J. book.

1    As Your Honor probably knows, this statute is -- you know, has

2    been amended several times, there's a subsection C that's not

3    at issue in this case that we sometimes charge, and so there

4    are things that had to be added and removed.

5             THE COURT:  I appreciate that.  I just was curious.

6             Mr. Rankin, any objection to the elements as

7    I provided them?

8             MR. RANKIN:  No, Your Honor.

9             THE COURT:  I mentioned to you at the beginning,

10   Mr. Streeter, that one of the purposes of today's proceeding

11   was to make sure that there's an independent factual basis that

12   satisfies each of the essential elements of Count One of the

13   Information.  That is typically accomplished, when there is a

14   plea like this involving a written plea agreement, by including

15   a factual basis at the end of the plea agreement.  You have

16   such a set of facts at the end of your plea agreement.  They

17   are found on pages 18 through 23.  I see that your initials are

18   on the bottom of each of those pages.  Did you review all of

19   those facts in detail with your lawyer before you initialed

20   those pages?

21            THE DEFENDANT:  Yes, I did, Your Honor.

22            THE COURT:  Do you have any disagreement with those

23   facts as they relate to you?

24            THE DEFENDANT:  No, I don't, Your Honor.

25            MR. MURRAY:  Your Honor, may we put something on the

```
 1   record with respect to the facts?

 2            THE COURT:  Sure.

 3            MR. MURRAY:  Judge, I noticed after the

 4   plea agreement had been signed that there was a typographical

 5   error in the middle of page 2 in the sentence that begins with

 6   "two days later."

 7            THE COURT:  You said page 2?

 8            MR. MURRAY:  22.  I'm sorry.

 9            THE COURT:  That's okay.

10            MR. MURRAY:  And the sentence begins with "two days

11   later," comma.  I had asked my legal assistant -- it originally

12   read L.B. sent Streeter two additional videos over Facebook.

13   I had asked my legal assistant to wipe that out and replace it

14   with L.A.  I contacted counsel.  It appears my legal assistant

15   repeated the error in handwriting, so that -- that -- I don't

16   think there's any objection.  That should read:  "Two days

17   later, L.A. sent Streeter two additional videos over Facebook,

18   requesting 3,800 Philippine pesos."  There is no L.B. in this

19   case.

20            THE COURT:  Mr. Murray, I assume you have the

21   original plea agreement with you?

22            MR. MURRAY:  I do, Judge.

23            THE COURT:  Okay.  If you could make that edit on

24   page 22, initial it, provide it then to Mr. Rankin and

25   Mr. Streeter, and if they agree with the edit, if they could
```

1    initial it as well and then confirm on the record that that has

2    been done, and then when you return to your office, Mr. Murray,

3    assuming it's acceptable to Mr. Rankin and Mr. Streeter, that

4    you file that as an amended plea agreement.

5              MR. MURRAY:  Yes, Your Honor.

6              MR. RANKIN:  Judge, we've reviewed and initialed

7    that.  I've initialed it and Mr. Streeter has initialed it.

8              THE COURT:  Okay.  Thank you.

9              Mr. Murray, is that edit that you earlier described

10   verbally now reflected in the plea agreement and initialed by

11   all sides?

12             MR. MURRAY:  Yes, Judge.

13             THE COURT:  Okay.  Thank you to you all.

14             Before I proceed to take the defendant's guilty plea,

15   does either the Government or the defense have any additional

16   areas they believe I should cover or any additional questions

17   they believe I should ask?

18             Mr. Murray?

19             MR. MURRAY:  No, Your Honor.

20             THE COURT:  Thank you.

21             Mr. Rankin?

22             MR. RANKIN:  No, Your Honor.  Thank you.

23             THE COURT:  Keeping track using that form,

24   Mr. Murray, of my colloquy?

25             MR. MURRAY:  Yes, Judge.

```
 1            THE COURT:  I appreciate you doing that.

 2            Mr. Streeter, I'm prepared to take your guilty plea,

 3  and you can let me know when you're prepared to move forward

 4  simply by standing up with your lawyer, Mr. Rankin.

 5            Mr. Streeter, how do you plead to Count One of the

 6  Information, guilty or not guilty?

 7            THE DEFENDANT:  Guilty, Your Honor.

 8            THE COURT:  Mr. Rankin, are you satisfied that your

 9  client is competent and that he is pleading guilty knowingly

10  and voluntarily, with a full understanding of the consequences

11  of his guilty plea?

12            MR. RANKIN:  Yes, Your Honor.

13            THE COURT:  I thank you both.

14            Mr. Streeter, you can sit down.

15            I'm getting ready now to make my findings,

16  Mr. Streeter.  Before I do so, I mentioned to you at the

17  beginning that if you had any questions for the Court I would

18  do my best to answer them.  If you have any questions for the

19  Court, now would be your last time to ask those questions.

20  Do you have any questions for the Court regarding your guilty

21  plea?

22            THE DEFENDANT:  No questions, Your Honor.

23            THE COURT:  Based upon Mr. Streeter's answers and

24  responses to my questions, the representations of counsel and

25  my observations of Mr. Streeter's demeanor, it is my finding
```

1    that the defendant is fully competent and capable of entering

2    an informed guilty plea, that he is aware of the nature of the

3    charges -- or the charge, rather, to which he is pleading

4    guilty and the consequences of his plea, and that his guilty

5    plea is a knowing and voluntary one supported by an independent

6    factual basis that satisfies each of the essential elements of

7    Count One of the Information.  In my report to the District

8    Judge I will therefore recommend the defendant's plea of guilty

9    be accepted, that he be adjudged guilty and that his sentence

10   be imposed accordingly.

11           Mr. Streeter, to any defendant who pleads guilty to

12   an offense I tell the following:  Once a defendant has pled

13   guilty, certainly once the Court accepts that guilty plea, it

14   may be the case that with respect to your pretrial release

15   conditions that if it's alleged, not proven, but alleged that

16   you have committed a violation of your conditions, you may bear

17   the burden, not the Government, of showing that you should

18   remain on release.  If you were a defendant that came in on an

19   Indictment and there was no plea involved, the Government would

20   bear the burden to show that, but now that you've entered a

21   guilty plea, and particularly once the Court accepts that

22   guilty plea, the burden may shift to you under the law to

23   demonstrate that you should remain on release.

24           The long and the short of it is, Mr. Streeter, that

25   you should adhere strictly to the release conditions and you

```
1    should make sure that you don't come on the Court's radar at
2    all with respect to even an allegation that you have violated
3    any conditions of release.
4            Mr. Rankin is a very experienced lawyer and he will
5    explain this further to you, if he hasn't already, but do you
6    understand generally what I've just described?
7            THE DEFENDANT:  Yes, I do, Your Honor.
8            THE COURT:  Thank you.
9            Mr. Murray, anything further from the Government?
10           MR. MURRAY:  No, Your Honor.  Thank you.
11           THE COURT:  Thank you.
12           Mr. Rankin, anything further?
13           MR. RANKIN:  No, Your Honor.  Thank you.
14           THE COURT:  Thank you to you both.  We'll be in
15   recess.
16                    - - - - -
17           (Proceedings concluded at 10:09 a.m.)
18                    - - - - -
19
20
21
22
23
24
25
```

1          C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript of

4   proceedings taken in an initial appearance and change of plea

5   hearing in the United States District Court is a true and

6   accurate transcript of the proceedings taken by me in machine

7   shorthand and transcribed by computer under my supervision,

8   this the 2nd day of February, 2022.

9

10

11                              /S/ DAVID J. COLLIER

12

13                         DAVID J. COLLIER

14                         OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25